UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

FRED DODGE
706 Latham Drive
Crownsville, MD 21032

       Plaintiff,

   v.

TRUSTEES OF THE
NATIONAL GALLERY OF ART,
6th & Constitution Ave., NW
Washington, DC 20565;
EARL A. POWELL, III, individually
and as Director of The National
Gallery of Art,
6th & Constitution Ave., NW
Washington, DC 20565;
DARRELL R. WILSON, individually
and as Administrator of The National
Gallery of Art,
6th & Constitution Ave., NW
Washington, DC 20565;
MICHAEL GIAMBER, individually
and as Deputy Chief, Facilities
Management of the National Gallery
of Art,
6th & Constitution Ave., NW
Washington, DC 20565;
JAMES LUCEY, individually
and as Chief of the Office of
Protective Services at the
National Gallery of Art,
6th & Constitution Ave., NW
Washington, DC 20565, and
MICHAEL PRENDERGAST,
individually and as Deputy Chief
for Operations of the Office of
Protective Services at the
National Gallery of Art,
6th & Constitution Ave., NW
Washington, DC 20565,

CASE NUMBER  1:03CV01613

JUDGE: Royce C. Lamberth

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 07/30/2003

JURY ACTION

   **C O M P L A I N T**

   JURY TRIAL DEMANDED

FILED

JUL 3 0 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

Defendants.   :

COMES NOW Fred Dodge, plaintiff above-named, and by his attorney, Lee Boothby, states:

<b>I. JURISDICTION</b>

1.      The jurisdiction of this court is invoked pursuant to Title 28 U.S.C. §§ 1331, 1343, 2201, and 2202, this being a civil action arising under the laws of the United States and seeks to redress the deprivation of civil rights and to obtain damages for the deprivation of such rights arising from the First and Fifth Amendments to the United States Constitution and is an actual controversy between the parties.

2.      The jurisdiction of this court further arises under 5 U.S.C. § 552a(g)(5) by reason of the fact that this suit is, in part, brought because the Agency has disclosed information from its records in violation of the Privacy Act of 1974.

<b>II. VENUE</b>

3.      Defendant Trustees of the National Gallery of Art is a bureau of the Smithsonian Institution established by Congress to maintain and administer the National Gallery of Art as set forth in 20 U.S.C. § 72 and is an employer located within the District of Columbia and thus within the jurisdiction of this court.

<b>III. PARTIES</b>

4.      Plaintiff Fred Dodge was an employee of the National Gallery of Art and a resident of the State of Maryland and a citizen of the United States. At all times pertinent, plaintiff was employed by the National Gallery of Art. He was also at all times

2

pertinent the Vice President of AFGE Local 1831.

5.   Defendant Earl J. Powell, III, is Director of the National Gallery of Art, and all acts for which he is made a defendant were committed within the District of Columbia.   He is sued both individually and in his official capacity.

6.   Defendant Darrell R. Wilson is the Administrator of the National Gallery of Art, and all acts for which he is made a defendant were committed within the District of Columbia.  He is sued both individually and in his official capacity.

7.   Defendant Michael Giamber is the Deputy Chief of Facilities Management of the National Gallery of Art, and all acts for which he is made a defendant were committed within the District of Columbia.   He is sued both individually and in his official capacity.

8.   Defendant James Lucey is the Chief of the Office of Protective Services of the National Gallery of Art, and all acts for which he is made a defendant were committed within the District of Columbia.   He is sued both individually and in his official capacity.

9.   Defendant Michael Prendergast is the Deputy Chief for Operations of the Office of Protective Services, National Gallery of Art, and all acts for which he is made a defendant were committed in the District of Columbia.  He is sued individually and in his official capacity.

### IV. FACTUAL ALLEGATIONS

10.   On or about November 26, 2001, plaintiff applied for leave status under the Family Medical Leave Act of 1993 (FMLA).   On December 4, 2001, the National Gallery of Art issued a letter through Linda Pettiford, the personnel staffing specialist,

3

approving plaintiff's request to be approved for use of FMLA. This letter stated:

> The medical documentation submitted to the personnel office from your
> son's physician will support the use of this leave as of November 26,
> 2001, and will remain in effect until November 26, 2002. You will be
> entitled to use up to 12 work weeks of leave during this period for this
> purpose. If you have any questions please contact me on Ext. 6289.

11.     The record concerning the FMLA application included a certificate of
health care provider relating to plaintiff's son's medical condition.

12.     During the week of February 4, 2002, plaintiff became concerned about
the confidentiality of the material in his FMLA file. Plaintiff was informed that his son's
confidential medical certification would be made available to any manager upon their
request. Plaintiff requested that such information not be disclosed as it was confidential
and specifically stated that he was not granting permission for the medical information
in the file to be revealed to anyone else. Subsequently, plaintiff contacted the personnel
department a second time to reiterate he was not allowing anyone to review his son's
medical file.

13.     During this same time plaintiff received a memo ordering him to work
mandatory overtime on February 22, 2002. Such mandatory overtime related to a
Gallery-wide test of its emergency generator. Plaintiff advised Meredith Weiser, deputy
personnel officer, that he needed to use his FMLA status during the scheduled mandatory
overtime. Ms. Weiser informed plaintiff his FMLA status did not relieve him from
having to work the mandatory overtime and indicated the decision would be up to his
supervisor.

14.     Around this same time plaintiff was called out of town due to the sudden
death of his brother. Within a week of his return, plaintiff was aware that the personnel

office had given his son's confidential file to plaintiff's supervisor. This supervisor told plaintiff that he had reviewed plaintiff's son's medical information.

15. On the morning of the scheduled mandatory overtime, February 22, 2002, plaintiff's supervisor ordered plaintiff to work the mandatory overtime. Plaintiff refused to comply since he had previously notified personnel, his supervisor, and his supervisor's manager of his need to use his FMLA status.

16. Darrell R. Wilson, Administrator of defendant National Gallery of Art, on March 20, 2002, responded to plaintiff's letter to Director Powell. He informed plaintiff in writing that Gallery Circular No. 61 on FMLA, Section XI, states that "[t]he employee's immediate supervisor will be responsible for serving as the primary and initial contact with his or her staff member who is requesting FMLA leave." It was on this basis that the personnel office turned over the FMLA confidential file to plaintiff's supervisor who made copies of the FMLA file, removed it from personnel, and stored it in his own office. However, 29 C.F.R. § 825.500(g) states:

> Records and documents relating to medical certifications, recertifications or medical histories or employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files, and if ADA is also applicable, such records shall be maintained in conformance with ADA confidentiality requirements. . . . except that:
>
> (1) supervisors and managers may be informed regarding necessary restrictions on the work or duties of an employee and necessary accommodations. . . .

17. Plaintiff claims that defendant's action in turning over the complete medical records relating to one of the employee's family members went beyond the limitations imposed under both the FMLA and the Privacy Act of 1974 and provided

plaintiff's manager with information beyond that permitted by the regulation.

18.     On March 8, 2002, plaintiff wrote to Earl A. Powell III, the Director of

the National Gallery of Art, about the restoration of his FMLA rights.  As a part of this

letter of complaint, he also stated:

> Please contact the National Gallery of Art Personnel department on the
> behalf of our family and so many others that may have their children's
> most confidential medical certification information exposed and have them
> adhere to the stringent confidentiality requirements we should be provided
> through FMLA.

Plaintiff's letter, which indicated his union position, was also sent to certain members of

Congress, including Senators Barbara A. Mikulski and Paul Sarbanes of Maryland and

Congressmen Steny A. Hoyer, Robert L. Ehrlich, Wayne Gilchrest, Benjamin L. Cardin,

Constance A. Morella, Albert R. Wynn and Elijah E. Cummings.

19.     Shortly after the letters were received by the senators and congressmen

and, more particularly, on April 24, 2002, Michael Prendergast, Deputy Chief for

Operations, Office of Protection Services, of defendant National Gallery of Art, found

plaintiff to be guilty of insubordination for failing to work the overtime on February 22,

2002, and suspended him for 4 work days: May 13-14 and 21, 22.

20.     On or about May 15, 2002, Michael Giamber, Deputy Chief, Facilities

Management, told a new hire that plaintiff, the union local vice president, was a

"problem child" but that he would not be around much longer because "we already have

something in the works for Mr. Dodge."

21.     Shortly after receiving a Notice of Proposed Removal, plaintiff learned that

a "Security Alert" had been posted at various points in the National Gallery of Art

building in plain sight of other employees and contractors.   The notice displayed

plaintiff's photograph, age, height, weight, date of birth, sex, race, complexion, and Social Security number. Plaintiff claims this was in retaliation for his protected action of bringing to the attention of members of Congress the National Gallery of Art's violation of employees' FMLA privacy rights. In addition, the "security alert" containing confidential information, in and of itself, also violated plaintiff's First and Fifth Amendment rights of privacy under the Privacy Act of 1974.

### COUNT I (Constitutional Claim)

22.     Plaintiff repeats and realleges paragraphs 1-21 of this Complaint.

23.     Defendants have violated plaintiff's rights of privacy as protected by the First and Fifth Amendments to the United States Constitution and the Privacy Act of 1974 as set forth in 5 U.S.C. § 552a.

### COUNT II (Bivens Claim)

24.     Plaintiff repeats and realleges paragraphs 1-21 of this Complaint.

25.     Defendants Earl A. Powell, III, Darrell R. Wilson, Michael Giamber, and Michael Prendergast violated plaintiff's First and Fifth Amendment right to petition government for redress of grievance when defendants retaliated against him for petitioning members of Congress regarding his FMLA complaint against the National Gallery of Art on behalf of not only himself but other National Gallery of Art employees, and plaintiff has been damaged thereby.

### COUNT III (Bivens Claim)

26.     Plaintiff repeats and realleges paragraphs 1-21 of this Complaint.

27.     Defendants James Lucey and Michael Prendergast, acting in their individual capacities and without plaintiff's consent, invaded plaintiff's First and Fifth

Amendments rights of privacy as well as privacy rights under the Privacy Act of 1974 by posting the "Security Alert" containing personal information, the most potentially damaging of which is plaintiff's Social Security number.

28.     Plaintiff contends the posting of this "Security Alert" upon the bulletin board was willful and malicious.

29.     Plaintiff has a right to recover and claims compensatory and punitive damages from the individual defendants Earl A. Powell III, Darrell R. Wilson, Michael Giamber, and Michael Prendergast for their tortious acts which were in retaliation for plaintiff's exercising his constitutional right to petition members of Congress for redress of grievance as to the Gallery's violation of FMLA requirements.

30.     Plaintiff has a right to recover and claims compensatory and punitive damages from individual defendants James Lucey and Michael Prendergast for their part in the willful and malicious posting of the "Security Alert."

## IV. PRAYERS FOR RELIEF

WHEREFORE plaintiff respectfully prays that the following relief be granted:

1.     Damages be awarded as provided for in 5 U.S.C. § 552a(4) and other compensatory damages.

2.     As to the defendants Powell, Wilson, Giamber, and Prendergast, punitive damages be awarded for the violation of plaintiff's constitutional and statutory rights of privacy as well as the willful and malicious actions taken in retaliation for plaintiff's exercising his right to petition members of Congress and the invasion of plaintiff's privacy.

3.     For reasonable attorney fees and costs incurred.

8

4.     For such other and further relief as the court may deem just and proper.

Dated:  July 30, 2003

LEE BOOTHBY, Bar No. 429194
4545 42nd St., NW, Suite 201
Washington, DC 20016
(202) 363-1773

Counsel for Plaintiff